IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| N.S., by and through his parent and next friend, MEG S., | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 5699 |
| v. | ) ) | Judge Ronald A. Guzmán |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion to enforce the stay-put injunction [5] is denied and the case is dismissed without prejudice for failure to exhaust administrative remedies. Civil case terminated.

## STATEMENT

N.S., a minor, by and through his parent and next friend, Meg S., has filed a motion seeking an emergency injunction pursuant to the stay-put provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j). The issue underlying the request for emergency relief is the Chicago Board of Education's ("Board") alleged failure to provide N.S., a child with multiple significant disabilities, with an appropriate educational placement.

N.S. attended eighth grade in a cluster program at Nettelhorst Elementary School, which accommodated his special needs, including that his classes be in close physical proximity to each other and on the same floor. According to N.S., in anticipation of his graduation from eighth grade, his mother met with his IEP ("Individualized Education Program") team in October 2018.1 The IEP team purportedly gave N.S.'s mother three options for N.S.'s high-school placement, telling her to research the options and select a school for N.S. On January 9, 2019, N.S.'s mother spoke to her son's case manager at Nettelhorst and informed him that she had selected Lane Technical College Preparatory High School ("Lane Tech") as the high school for N.S. The case manager thereafter sent an official request form to the Board reflecting N.S.'s decision. According to N.S.'s counsel, N.S.'s mother was led to believe that her notifying school-district personnel of her choice was all that was necessary to ensure N.S.'s placement at Lane Tech for high school.

According to the Board, the process was quite different. The Board maintains that in

---

1 The IEP team is composed of individuals required by law to be involved in developing and writing a child's IEP.

spring 2019, it initiated a pilot program that allowed parents of special-needs children to formally identify preferred high schools for their child. In February and March 2019, letters were sent to the parents of all special-needs students who had formally identified their preferred high schools, explaining that a lottery would be conducted for available seats. The Board maintains that the form submitted by N.S.'s case manager on January 9, 2019 designating Lane Tech as N.S.'s preferred school was only a request and nothing more. In fact, the Board states, while 20 students had requested placement at Lane Tech, only one opening existed there for a special-needs student. The letter sent out by the Board notifying families of the lottery process included a map identifying high schools that offered programs for special-needs students.

N.S.'s mother maintains that she never received any such letter. The parties do agree, however, that on April 29, 2019, N.S.'s mother received a letter informing her that N.S. would not be attending Lane Tech and had instead been assigned to Uplift Community High School ("Uplift"). N.S. contends that Uplift is not an appropriate placement because the classrooms are not closely grouped and would require N.S. to negotiate stairs. In addition, N.S. maintains that Uplift is not an appropriate placement because he graduated from a program that put him well ahead of the materials that would be taught at Uplift. N.S.'s counsel asserts that both he (whom N.S.'s mother retained sometime in May 2019) and N.S.'s mother engaged in a series of communications with the Board to attempt to resolve the dispute prior to their filing for an administrative hearing on August 6, 2019. A hearing officer was appointed, and N.S. filed a stay-put motion on August 14, 2019. The hearing officer set a briefing schedule on N.S.'s motion and has indicated he will likely rule by September 11, 2019. The school year starts on September 3, 2019, and N.S. contends that denying him admission to Lane Tech for the entire first week of classes would result in irreparable harm.

The IDEA requires a plaintiff to exhaust his administrative remedies before seeking court intervention. 20 U.S.C. §1415(i)(2). N.S. appears to contend that the Board should be estopped from relying on the exhaustion requirement because his failure to exhaust is the result of the Board's misrepresentation to his mother that he had already been placed at Lane Tech with the submission of the January 9, 2010 form.2 Had it not been for this purported misrepresentation, N.S. argues that he and his mother would have known of the need to take action long before April 29, 2019. But this argument fails for several reasons. First, by all accounts, while N.S. knew as of April 29, 2019 that the Board had assigned him to Uplift and not Lane Tech, it was not until August 6, 2019 that he filed a request for an administrative hearing to resolve the dispute.3 Thus, even by N.S.'s timeline, three months passed from the date he was informed that he would not be going to Lane Tech and the filing of a request for an administrative hearing before the Board. Furthermore, given that N.S.'s mother contacted counsel in mid-May 2019,

---

2 The parties are in direct conflict as to whether any such misrepresentation was ever made. In the absence of any current record evidence on the topic, the Court would need to conduct an evidentiary hearing to determine the precise communications between the parties. Thus, the Court is not in a position to conclude that N.S. has a reasonable likelihood of success on this critical issue.
3

three months was more than enough time for her to request an administrative hearing.  Had she or counsel done so, N.S. would have exhausted his administrative remedies long before the first day of school.  N.S. has created the need for this emergency request by failing to act promptly; he cannot now claim that he should be excused from the requirement of exhausting administrative remedies because his mother relied on the Board's purported misrepresentation.  Insofar as the Court can discern, the hearing officer has acted promptly and diligently in addressing both the appropriateness of N.S.'s placement and the request for a stay-put order.  Because N.S. failed to exhaust his administrative remedies prior to filing this complaint and petition for emergency relief, the motion for emergency injunctive relief is denied and the complaint is dismissed without prejudice.

      Although the Court's denial is based upon the failure to exhaust administrative remedies, other problems with N.S.'s request preclude relief.  According to the Board, in order to grant N.S.'s request for immediate relief, it would be required to replace the winner of the lottery drawing for the sole available vacancy at Lane Tech.  Moreover, in addition to replacing the lottery winner, N.S. would be jumping ahead of two other lottery participants who requested assignment to Lane Tech and are in line ahead of N.S.[4]  Thus, the harm to the public resulting from the granting of N.S.'s proposed emergency injunctive relief would outweigh the harm to the N.S. of denying his request.

**Date**: September 3, 2019

                                              **RONALD A. GUZMÁN**
                                              **United States District Judge**

---

[4] There is an evidentiary dispute in this regard as well.  According to N.S., he simply could be added as an extra student to the Lane Tech program, and another student would not have to be displaced.  The Board argues that it is required by statute to maintain certain resources in the classroom for each disabled student; thus, it lacks the ability to commit the additional resources to Lane Tech that would be required if N.S. were added to the roster.  While N.S. maintains that the Board has the capacity to obtain a waiver of these requirements, the Board counters that obtaining a waiver is a difficult and lengthy process that would require the consent of the teacher who would be taking on an extra student.  The Board states that such consent is rarely obtained.  Furthermore, going forward with fewer resources per student would result in a diminution of the quality of education for every other special-needs student in the relevant classroom at Lane Tech.